**QUAKER ALLOY CASTING CO., Plaintiff, Counterclaim Defendant, Third–Party Plaintiff,**

v.

**GULFCO INDUSTRIES, INC., Defendant, Counterclaim Plaintiff, Crossclaim Plaintiff,**

v.

**CONSOLIDATED FOUNDRIES & MANUFACTURING CORPORATION, Third–Party Defendant, Crossclaim Defendant.**

**No. 85 C 1212.**

United States District Court, N.D. Illinois, E.D.

Nov. 15, 1988.

David L. Doyle, Mary K. Rochford, Therese A. Dynia, Thomas P. Cimino, Jr., Phelan, Pope & John, Ltd., Chicago, Ill., for plaintiff, counterclaim defendant, third-party plaintiff.

James K. Toohey, Arthur F. Radke, Sean M. Sullivan, David R. McCort, Ross & Hardies, Chicago, Ill., (David W. Rutledge, Nashville, Tenn., of counsel) for defendant, counterclaim plaintiff, crossclaim plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's May 24, 1988 memorandum opinion and order (the "Opinion," 686 F.Supp. 1319) dealt at length with extensive motions filed by the litigants in this dispute over castings produced for the oil-drilling industry.[1] In light of the acrimony

---

1. In the interest of judicial economy, this opinion will not repeat the Opinion's factual presentation, instead assuming the reader's familiarity with that material. Definitions of terms, parties, witnesses and the parties' submissions are

that has marked the lawsuit throughout (unfortunately infecting the relationship between the lawyers as well as their clients), it is not surprising that the Opinion appears to have added fuel to the conflagration and has led to various other matters this Court must now address.

This opinion deals with two aspects of the parties' cross-motions for sanctions deferred by the Opinion for later resolution [2] and with two newly-filed matters:

1. Gulfco's Motion for Reconsideration or Clarification; and

2. Quaker–Consolidated's Motion for Special and Limited Discovery.

For the reasons stated in this memorandum opinion and order:

1. Gulfco's Fed.R.Civ.P. ("Rule") 11 motion for sanctions, based on the unsuccessful aspects of Quaker's summary judgment motions, is denied.

2. Quaker's sanctions motion, based on assertions in Gulfco's February 1987 Emergency Motion To Compel, is also denied.[3]

3. Gulfco's Motion for Reconsideration is denied.

4. Quaker–Consolidated's motion for additional discovery is granted.

### *Gulfco's Motion for Sanctions*

█ Gulfco seeks recovery against Quaker for the latter's partially unsuccessful motions for summary judgment.[4] Gulfco says Quaker violated Rule 11 by seeking summary judgment on both its Complaint and Gulfco's Counterclaims despite clearly disputed material issues of fact (G Sanctions Mem. 11–15). Both sides have now had the opportunity to supplement their previous filings in light of the Opinion's resolution of the summary judgment motions. Despite Quaker's basically nonresponsive submission, it prevails on this issue.

Both sides have really missed the boat in their efforts to clarify the application of Rule 11 to Quaker's unsuccessful motions. Quaker does little more than offer such conclusory (and non-helpful) statements as (Q Sanctions Supp.Mem. 1–2):

> Quaker respectfully urges that Gulfco's cross-motion for sanctions be denied because Quaker had an objectively reasonable basis at the time of filing to conclude that its Rule 56(a) and (b) motions and briefs in support thereof were well grounded and warranted by law and record facts.

For its part, Gulfco seems to operate on the assumption that because Quaker lost on various aspects of the Rule 56 motions, it clearly violated Rule 11 by even seeking summary judgment. This opinion will minimize any further addition to the incredible

---

also carried over from the Opinion, with these additions covering the most recent briefs:

1. Quaker's supplemental memorandum on sanctions is "Q Sanctions Supp.Mem.," with Gulfco's response "G Sanctions Supp. Mem. I" and its supplemental filing as to the February 1987 motion "G Sanctions Supp. Mem. II."

2. As for the filings on Gulfco's Motion for Reconsideration:

(a) Gulfco's opening memorandum is "G Rec.Mem." and its supplemental filing is "G Rec.Supp.Mem.";

(b) Quaker's responsive filing is "Q Rec. Mem.";

(c) Consolidated's separate filing is "C Rec. Mem."

3. As for Quaker–Consolidated's discovery motion:

(a) Quaker–Consolidated's opening memorandum is "Q–C Disc.Mem.";

(b) Gulfco's Response is "G Disc.Mem."; and

(c) Quaker's reply brief is "Q Disc.R.Mem."

All citations to the Opinion will take the form "Opinion at ——."

**2.** This opinion will not address the previously-postponed ruling on (1) Quaker's motion for sanctions as to Gulfco's Answer and Counterclaim and (2) Gulfco's motion for sanctions attacking Quaker's sanctions motion (see Opinion at 1351–52). Both those matters will be treated after the merits of the case are finally resolved.

**3.** As is discussed shortly, Opinion at 1352–53 has already held Gulfco violated Rule 11 by alleging in that motion that Casting's certifications were fraudulent and perjured. Apart from that, Opinion at 1352 merely offered Gulfco a final opportunity to explain the emergency basis for its motion when Ingram Cactus continued to use the suspect parts for another eight months.

**4.** As Opinion at 1322 n. 2 explained, Consolidated is not now involved in the various motions for sanctions.

amount of effort (not to mention paper) already expended on this case. No extended discussion is necessary to conclude that Quaker did not transgress Rule 11's dictates.

Not every unsuccessful summary judgment motion signals a violation of Rule 11, of course (cf. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986) ("It is obvious from the text of the Rule that the pleader need not be correct in his view of the law")). On that score the issue is not ultimate failure of the motion, but rather whether the movant had a reasonable basis in fact and law to bring it in the first place.

For one thing, Quaker (or Quaker–Consolidated as to the joint motions) prevailed to a major extent on the Rule 56 motions. On Quaker's claims against Gulfco, summary judgment was granted on Count I in toto and on Count II as to the work-in-progress goods (though not as to the finished goods component). To be sure, summary judgment was also denied on Gulfco's counterclaims against Quaker and cross-claims against Consolidated, though the motions did narrow the issues substantially.[5] For example:

1. Gulfco was held to have "accepted" (in the UCC sense) the previously delivered goods.

2. Gulfco was also held to have waived its claims regarding surface defects and the stem adaptors by failing to give Quaker–Consolidated timely notice of the claimed breach of warranty.[6]

Of course such partial success will not insulate Quaker from Rule 11 sanctions if other aspects of its motions were objectively nonassertable in the Rule 11 sense. This opinion accordingly turns to those other aspects.

Gulfco claims Quaker brought its motions in the face of clearly disputed factual issues in a number of areas. But summary judgment may be appropriate not only when the material facts are undisputed but also when the nonmovant's evidentiary offering is simply too thin to warrant the case going to trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (citations and footnote omitted) teaches:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Fed.Rule Civ.Proc. 56(e) (emphasis added).... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

And *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted) tells us the nonmovant can lose if its evidence "is merely colorable ... or is not significantly probative...." Thus the summary judgment standard is equivalent to the standard for a directed verdict at trial (*id.* at 250, 106 S.Ct. at 2511).

In many areas Quaker could validly argue Gulfco's evidence was insufficient to allow a rational factfinder to rule in Gulfco's favor. For example, as Opinion at 1327–30 noted, Quaker–Consolidated submitted extensive evidence that the parts manufactured for Gulfco were conforming, that Gulfco used large numbers of the parts without incident and that Gulfco's claims of defect surfaced only when it

---

**5.** Issue-narrowing (the Rule 56(d) byproduct of an unsuccessful Rule 56 motion) is of course not an independently valid purpose for seeking summary judgment. That is the province only of Rule 56(a) or 56(b), even though an unsuccessful (although objectively reasonable) motion under those provisions may generate Rule 56(d) findings (see this Court's opinions in such cases as *Arado v. General Fire Extinguisher Corp.*, 626 F.Supp. 506, 509 (N.D.Ill.1985), and cases cited there). Thus an improvident Rule 56 motion

will not stave off sanctions because of the collateral benefits of Rule 56(d) (see, e.g., *SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555 (N.D.Ill. 1984)).

**6.** No effort has been made here to set out a comprehensive list of matters on which the Opinion agreed with Quaker's legal and factual assertions.

sought to rid itself of parts it no longer needed.

True enough, this Court ultimately found summary judgment was not warranted in several areas despite the paucity of evidence supporting Gulfco's position as compared to extensive evidence submitted by Quaker. It concluded that despite the weakness of Gulfco's case, the evidence was not so one-sided as to prevent a rational factfinder from siding with Gulfco. That narrow escape for Gulfco does not mean, however, that Quaker did not have a colorable argument in support of summary judgment.

Gulfco has cited to no cases in which a summary judgment movant was sanctioned for filing such closely contested motions.[7] Though the Opinion agreed with Gulfco that in several areas Quaker had not established its right to summary judgment, this Court is constrained to agree with Quaker that those unsuccessful aspects do not warrant the application of Rule 11.

Although that conclusion is plainly called for even on the record as ultimately accepted in the Opinion, it is further buttressed by another important factor. Many of Gulfco's claims depended in large part on the affidavit from Gulfco's expert witness Bravenec. This Court relied on the Bravenec evidence in several key areas to find that genuine material factual disputes existed:

1. Bravenec was the only witness to quantify the extent of surface defects on the gates and seats (Opinion at 1329–30).

2. Bravenec submitted the only evidence on the extent of chemical nonconformity in the castings (Opinion at 1330).

3. Bravenec attested that Casting's definition of master heat certifications was inconsistent with the recognized industry definition (Opinion at 1331).

4. Bravenec also provided the evidence that chemical, physical and certification problems were latent defects, so that Gulfco's notification of those alleged warranty breaches was not untimely (Opinion at 1340).

Without the Bravenec evidence, Quaker would likely have been entitled to summary judgment on all or most of Gulfco's counterclaims.

That heavy dependence of Gulfco on Bravenec's evidence takes on special significance for current purposes, because Quaker had reasonable (though ultimately unsuccessful) arguments for inadmissibility of the Bravenec affidavit. As discussed in Opinion at 1328–29, Quaker argued not only that Bravenec's conclusions were based on assumptions unsupported by the record but also that he was not qualified as an expert on the matters to which he was attesting. When Gulfco went searching for an expert to evaluate the quality of the contested parts it turned to a person who, though an experienced metallurgical engineer in the oil and petrochemical industry, had no express qualifications in the specialized foundry process known as investment casting. This Court ultimately concluded Quaker had failed to prove Bravenec's general metallurgical knowledge was not relevant to investment casting issues—but Quaker's argument for striking the Bravenec evidence was certainly one that could be advanced in the objective good faith that sets the Rule 11 standard.

With the alleged defective condition of the parts being perhaps the central issue in the case, Gulfco took a risk by enlisting an expert without demonstrated knowledge in investment casting. Quaker's reasonable though unsuccessful motion to strike the Bravenec evidence adds substantial further support—even though none is needed—to the reasonableness of its overall summary judgment motions.

### Quaker's Motion for Sanctions

 Quaker has advanced two reasons for sanctioning Gulfco for its February 1987 "Emergency Motion of Gulfco Indus-

---

7. Opinion at 1353 has already contrasted the strong footing of Quaker's motions with the motion in *Mossman v. Roadway Express, Inc.,* 789 F.2d 804, 806 (9th Cir.1986), where the movant was found sanctionable under Rule 11 after having failed to submit any supporting evidence.

tries, Inc. To Compel the Production of Documents":

 1. Despite Gulfco's assertion of an emergency basis for the motion to compel, the suspect parts were used for at least eight months after the motion.

 2. Gulfco falsely charged the Casting certifications were fraudulent and perjured.

Opinion at 1353 held Gulfco did violate Rule 11 in the second respect. This Court then deferred ruling on the first, allowing Gulfco one last chance to explain the factual basis for its "emergency" motion (*id.*).

Gulfco has properly responded to that invitation by explaining the factual background of the motion and the decision by Ingram Cactus to continue using the parts. It has also—quite unbidden—taken the occasion to urge it did not violate Rule 11 by its assertion regarding Casting's certifications (G Sanctions Supp.Mem. II–4 to 6). Based on Gulfco's further submission, its original "emergency" characterization does not warrant Rule 11 sanctions. But its implicit invitation to reconsider the sanctionability of Gulfco's attack on the Casting certifications is rejected.

Gulfco has now explained why its initial "emergency" designation is not undercut by Ingram Cactus' continued use of the parts.[8] Through a new June 1988 affidavit from Gulfco's Chairman of the Board Claverie ("Claverie Aff. II"), Gulfco discloses the decision-making process that led to such continued use. Claverie explains the origin of Gulfco's concern in early 1987 over the safety of the Casting parts (Claverie Aff. II ¶ 6). When the second trip to Harsco's Pennsylvania facility did not uncover additional information on the actual chemical composition of the parts, Claverie and other Gulfco and Ingram Cactus personnel were forced to decide whether the safety risk posed by the chemical nonconformity warranted the immediate cessation of all further use of the parts. Claverie weighed the available evidence and decided continued use was warranted (Claverie Aff. II ¶¶ 9–11).

Those statements must be accepted at face value. Surely this Court is not in a position to second-guess that decision or—more importantly—to find Gulfco's "emergency" label wholly unwarranted because the parts continued to be used. In all likelihood Gulfco did overstate its case in February 1987 by asserting the requested documents were necessary to forestall Gulfco from having "to immediately shut down a substantial portion of its business operations ..." (Emergency Motion at 1). And given Claverie's now-revealed conclusion that the safety risk, when fully analyzed, was not considered so grave as to halt Gulfco's further sale of the valves, Gulfco must be seen as pleading guilty to substantial overstatement when it said "and if that product subsequently fails and causes serious injury or death, Mr. Claverie and Gulfco could be subject to criminal prosecution" (*id.* at 2). Those statements now appear quite exaggerated given the Claverie conclusion. Nonetheless, the Court does not find that such hyperbole constitutes a violation of Rule 11, and it denies Quaker's motion addressed to this aspect of Gulfco's February 1987 motion.

But as to Gulfco's earlier allegation of fraud and perjury, its renewed effort still has not come forward with supporting evidence. Nor is its "attorney work-product" type defense (G Sanctions Supp.Mem. II–4 to 6) at all persuasive. What is at issue are not the subjective thought processes of Gulfco's counsel, but rather whether objective facts in their possession rendered their accusation reasonable. This Court's earlier conclusion of a Rule 11 violation stands.

*Gulfco's Motion for Reconsideration*

 ■ In addition to its just-rejected (and unlabeled) effort to thresh old straw, Gulfco asks this Court to reconsider two other conclusions drawn in the Opinion:

---

8. Such continued use may, however, have other ramifications. Quaker–Consolidated believe it may bear on the issues of Gulfco's sale of the allegedly defective parts to Ingram Cactus and the waiver of warranty claims. That position underlies Quaker–Consolidated's motion for further discovery, discussed later in this opinion.

1. that Gulfco agreed to the purchase of the work-in-progress parts without warranty rights and

2. that Gulfco failed to provide timely notification to Quaker–Consolidated of its claims regarding surface pitting.

Despite what Gulfco appears to think, this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure. Motions such as this reflect a fundamental misunderstanding of the limited appropriateness of motions for reconsideration.[9] Gulfco has given no good reason to alter the Opinion's holdings.

Quaker Rec.Mem. 2–3 correctly notes the narrow functions of such motions. In that respect this Court has often quoted *Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983):

> The motion for reconsideration would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

Our Court of Appeals has confirmed this Court's view of the limitation on such motions (*Publishers Resource v. Walker–Davis Publications*, 762 F.2d 557, 561 (7th Cir.1985), quoting with approval—and with added emphasis—this Court's opinion in *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665 (N.D.Ill. 1982), *aff'd and adopted*, 736 F.2d 388, 393 (7th Cir.1984)).

■ In this instance Gulfco's lawyers have largely repeated the performance described in *Settino v. City of Chicago*, 642 F.Supp. 755, 760 (N.D.Ill.1986):

> [C]ounsel's memorandum has simply rehashed the same arguments advanced in the original briefing and found inadequate by this Court.

And to the extent Gulfco has submitted "new" evidence, it gives no explanation of why such evidence was not provided in the original submissions. *Publishers Resource*, 762 F.2d at 561 makes it plain that Gulfco cannot now introduce evidence to which it had access when it tendered its previous filings. Indeed, the "new" evidence is of no great value to Gulfco's arguments in any event—it in no way undermines the conclusions reached in the Opinion.

Gulfco also proffers a new legal theory to avert summary judgment on the work-in-progress goods. G Rec.Mem. 14–15 contends that if this Court persists in ruling Gulfco agreed to exclude all warranties as to those goods, this Court should also find Gulfco was fraudulently induced to do so. But no such argument was advanced in Gulfco's original filings. At that time it did contend its comptroller Kozak may have been fraudulently induced to modify the May Agreement in July 1983—but that is obviously not at all equivalent to having raised a fraudulent inducement theory as to the May Agreement itself.[10] *Publishers Resource*, 762 F.2d at 561 also teaches that new legal theories based on previously-available information cannot be offered on a motion for reconsideration.

So much, then, for Gulfco's effort to obtain reconsideration of the Opinion's rulings. For the reasons just outlined—both substantive and procedural—such reconsideration is denied. What remains from the same motion is a request for clarification of two matters involving the work-in-progress goods.

---

9. Although "motions to reconsider" find no direct authorization in the Rules, this Court has frequently noted the case law support for properly conceived motions of that kind (see, e.g., *National Union Fire Ins. Co. of Pittsburgh v. Continental Illinois Corp.*, 116 F.R.D. 252, 253 (N.D.Ill.1987)).

10. If anything, Gulfco's initial assertion of a totally different fraudulent inducement, as to a totally different agreement, creates a strong negative inference as to the validity (and perhaps even a serious question as to the bona fides) of the now-tendered argument.

First Gulfco asks whether, if it is required to pay for those goods immediately, it is permitted to offset its claimed damages. That is the identical issue dealt with in Opinion at 1343–44 as to the Count I goods, and the same answer applies. If Quaker wants an enforceable judgment (that is, one capable of being executed upon) as to Gulfco's obligations on the work-in-progress goods, it will have to do so under Rule 54(b). This Court would then consider the matter in the context of Gulfco's undecided counterclaims (see *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7–13, 100 S.Ct. 1460, 1464–1467, 64 L.Ed.2d 1 (1980)).

Gulfco next seeks an interpretation of its obligation as to the work-in-progress goods. It wants to know precisely which goods it will be required to accept and pay for (G Rec.Mem. 16). But by definition that question of contract interpretation is one at which the parties will have to take the first crack. As and when the entry of judgment is sought on those goods, the litigants will have the opportunity to suggest the appropriate wording. In the meantime the issue is not ripe.

### Quaker–Consolidated's Discovery Motion

■ Finally this opinion turns to the Quaker–Consolidated motion growing out of Gulfco's submissions on the deferred sanctions motions. Quaker–Consolidated asks for additional discovery on two issues:

1. whether Gulfco in fact sold the contested parts to Ingram Cactus; and

2. whether Gulfco has, because of Ingram Cactus' use of the Castings parts after February 1987, waived its warranty rights based on nonconforming chemical and physical properties and improper certifications.

On both topics Quaker–Consolidated point to additional information that has recently come to light.

On the first issue, Opinion at 1336–37 n. 34 found a factual dispute existed on whether the allegedly defective goods were sold to Ingram Cactus. Now Quaker–Consolidated have secured evidence showing Ingram Cactus obtained control over all the Casting parts in Gulfco's inventory, with no attempt made to segregate "defective" from "nondefective" parts (Q Disc.R.Mem. 4–6).

On the second issue, Opinion at 1340–41 ruled Gulfco could not have waived certain claims because the asserted defects were latent and undiscovered. Now Quaker–Consolidated say Gulfco's supplemental submissions on the sanctions issues (particularly the new Claverie affidavit) indicate Gulfco and Ingram Cactus were aware of the problems as early as February 1987, yet use of the parts continued at least until October (Q–C Disc.Mem. 9–14). Quaker–Consolidated also have been told by Ingram Cactus' former plant manager Bill Wilkes that use of the parts may have continued at least until May 1988 (*id.* at 7–8). Such use with knowledge of alleged defects, if proved, could well constitute a waiver of warranty rights (see, e.g., *Atlantic Aluminum & Metal Distributors v. Adams,* 123 Ga.App. 387, 181 S.E.2d 101, 103–04 (1971)).

Gulfco's response does not object to the Quaker–Consolidated discovery request (G Disc.Mem. 2, 4). Instead Gulfco suggests further discovery should not be limited to the areas identified by Quaker–Consolidated (*id.* 4). Gulfco would like to obtain additional evidence from (*id.* 5–6):

two Quaker Alloy witnesses who were deposed early in the case, both of whom confirm that, whatever the meaning of the May Agreement, it was not intended to permit Casting Engineers to pass off worthless scrap to Gulfco.

But Gulfco has not made a showing equivalent to Quaker–Consolidated's of a need for additional discovery based on previously-unobtainable evidence. Gulfco's suggested area of inquiry is really just an echo of its already-disposed-of motion for reconsideration. If Gulfco wants to reopen discovery in that or any other respect, it will have to come forward with an explanation of why it could not have explored the area previously.

Accordingly, Quaker–Consolidated's motion for additional limited discovery is

**290**

granted.[11] At the next status hearing the parties should come prepared to discuss an appropriate deadline for completion of that discovery.

*Conclusion*

Each litigant's previously-deferred Rule 11 motion (except for the issues referred to in n. 2 and still deferred until the final resolution of this case) is denied. Gulfco's motion for reconsideration is also denied. Finally, Quaker–Consolidated's motion for additional discovery is granted.

At this stage it is appropriate for Quaker to quantify its attorneys' fees and expenses incurred in response to Gulfco's allegation that Casting certifications were fraudulent and perjured. Its filing on that subject is due on or before November 28, 1988. Though it may be a vain hope in light of past history, this Court expects the parties to try to minimize the areas of factual dispute (and the prospect of fees on fees). This entire subject will be discussed at the next status hearing, which is now scheduled for 9 a.m. December 9, 1988.

Michael G. Berkman, Trexler, Bushnell, Giangiorgi & Blackstone, Ltd., Chicago, Ill., for plaintiff.

Jeffrey D. Colman, Jenner & Block, Chicago, Ill., David G. Conlin, Robert M. Asher, Dike, Bronstein, Roberts, Cushman & Pfund, Boston, Mass., for defendants.

---

**11.** It should be made clear that no opinion is expressed here as to the legal significance of the evidence Quaker–Consolidated now seek.