**ZIP DEE, INC., Plaintiff,**

v.

**DOMETIC CORPORATION, Defendant.**

**No. 93 C 3200.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 27, 1996.

---

James J. Hill and Harry M. Levy of Emrich & Dithmar, Chicago, IL; George P. McAndrews, Stephen F. Sherry and Patrick J. Arnold, Jr. of McAndrews, Held & Malloy, P.C., Chicago, IL, for Plaintiff.

Peter V. Baugher and Kenneth E. Kraus of Schopf & Weiss, Chicago, IL; Ira S. Sacks, William G. McGuinness and David C. Radulescu of Fried, Frank, Harris, Schriver & Jacobson, New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action between Zip Dee, Inc. ("Zip Dee") and The Dometic Corporation ("Dometic") is one of a very small handful of cases on this Court's calendar that has outlasted its third anniversary. With the case at last nearing trial on Zip Dee's original patent-based claims, the most recent of a seemingly never-ending series of disputes between the parties [1] involves two motions by Zip Dee:

1. a motion in limine as to the expert reports by which Dometic purports to have identified its 35 U.S.C. §§ 102 ("Section 102," dealing with anticipation) and 103 ("Section 103," dealing with obviousness) attacks on Zip Dee's patent in suit (the " '172 Patent"); and

2. a motion for fees and expenses in connection with Zip Dee's earlier motion to compel Dometic to produce two originally undisclosed opinions of counsel as to noninfringement (as frequently occurs in patent infringement cases, Dometic seeks to avoid a determination of willful infringement by advancing the defense that it relied in good faith on the opinion of counsel).

Because Zip Dee accuses Dometic of stonewalling in connection with the first matter, it seeks an award of attorneys' fees and expenses on that issue as well.

As has too often been the case in this overripe litigation, analysis of the two current motions discloses that Dometic has

---

1. In addition to its various oral rulings that did not become reduced to writing, this Court has been called upon to issue no fewer than 13 written opinions of varying lengths (5 of them reprinted in F.Supp.). As the attached Appendix listing those opinions reflects, Dometic far more than Zip Dee has sought to advance untenable positions during the course of the litigation. This opinion deals with two other instances of such efforts on Dometic's part.

sought to put an impermissible spin on each of the matters at issue. At the risk of incurring a Macbeth-like curse,[2] this Court now admonishes Dometic's counsel:

Hold, enough!

Although this opinion does not grant Zip Dee's alternative motion for total trial preclusion of the expert evidence proffered by Dometic, the latter is cautioned that any further instances of its repeatedly problematic litigation tactics will most likely be met with a stiffer response than the mere shifting of attorneys' fees and expenses.

### Dometic's Expert Reports

■ For an extended period of time (more than a year) Dometic resisted Zip Dee's legitimate efforts to pin down Dometic's claims of patent invalidity by obtaining an identification of the assertedly relevant prior art, coupled with a chapter and verse specification of how that prior art purportedly applied to each of Zip Dee's patent claims. Initially Dometic sought to bury Zip Dee with sheer numbers, simply listing a host of earlier patents (over 150?) without providing the matching element-by-element comparisons that are required to establish anticipation under Section 102 (see, e.g., *Shearing v. Iolab Corp.*, 975 F.2d 1541, 1544 (Fed.Cir.1992)). Nor did Dometic couple its citation of prior art references with the additional particularization that is required for an obviousness defense under Section 103 (see, e.g., *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1050–51 (Fed.Cir.1988)).[3] Instead Dometic postponed the day of reckoning by stating that only its trial lawyers had that information, which would ultimately be provided in the form of expert opinions. Then Dometic's further efforts at obfuscation led to the filing of a motion to compel by Zip Dee, which this Court granted—permitting Dometic to comply, however, through the promised expert reports.

When those reports were finally tendered, they did not at all conform to what is required by the uniform case law. Although the experts do mention a handful of items of prior art (one physical device, Zip Dee's own 1960s product and 11 earlier patents [4]), they included none of the necessary linkage with the elements of Zip Dee's patent claims for anticipation purposes under Section 102. Nor did Dometic provide the information as to the combination of references required for a Section 103 obviousness defense.

That noncompliance led to Zip Dee's follow-up motion, now up for decision. In response Dometic has said for the first time that it will in fact offer *no* prior patents against the Zip Dee patent claims. Instead Dometic's only proposed comparisons will be (1) between Zip Dee's own 1960s awning product and Zip Dee's '172 Patent and (2) between the 11 prior patent references and Dometic's own accused structure.

Three consequences flow from that current state of affairs. First, Dometic will not be permitted to shift ground: Its expert reports have set the outer boundaries of the arguments and evidence that it will be permitted to offer at trial regarding the claimed invalidity of the '172 Patent. Second, the nature of those reports permits only one true contention as to the invalidity of the '172 Patent: the argument that it represents no advance over Zip Dee's own earlier product. Third and relatedly, Dometic's contention that its own device does not extend beyond the teachings of the specified prior art will not be considered as a contention regarding the invalidity of the '172 Patent as such.

---

2. Both the litigants and any other readers of this opinion will no doubt recall Macbeth's challenge when he finally realizes the depth of deception in the three witches' prophecies, so that he must fight Macduff on equal terms (William Shakespeare, *Macbeth*, act 5, sc. 8):

Lay on, Macduff, And damn'd be him that first cries, "Hold, enough!"

3. This Court has independently researched the propositions exemplified by *Shearing* and *Uniroyal*, locating a host of other opinions that could be cited to the same effect. Those two cases have

been selected for citation here only because Zip Dee has correctly cited them for the stated propositions.

4. No mention whatever has been made of the many other patents with which Dometic had earlier sought to snow Zip Dee: Dometic neither specifically disclaimed those patents as relevant prior art nor offered any explanation of why it had sought to overburden Zip Dee by including them in the first place.

In that last respect, what this Court said briefly in its April 17, 1995 opinion in this action bears repeating:

> Intellectual property rights such as patent rights are matters of status. Their validity or invalidity may be determined without reference to the question whether another party's embodiment infringes on the patent.

When Dometic's experts eschewed any effort to lay Zip Dee's claims alongside the prior art to demonstrate anticipation or obviousness, they disqualified themselves from any attack in either respect on the *status* of the '172 Patent as embodying a valid invention.[5] By limiting their comparative analysis to one that places Dometic's device alongside the prior art, assertedly demonstrating that it contains no element not disclosed there, the experts have limited themselves—and hence Dometic—to a defense of noninfringement (and not invalidity) in that regard.

■ Accordingly this Court adopts the following limitations that have been requested at Zip Dee's Mem. 4–5:

a. Dometic will not be permitted to apply any of the asserted claims to any prior art reference other than Zip Dee's 1960s "prior art product" as embodied in the physical structure itself (illustrated in Exs. O and P of the Ouellette Report).

b. Dometic will not be permitted to introduce any testimony, claim chart or other exhibit which attempts an element-by-element comparison between the claims at issue and the 1960 Zip Dee Product containing information not provided in Exs. O and P of the Ouellette Report. If Dometic at this late date has failed to identify in the prior art an element in the asserted claims, it should not be allowed to "spring" such upon Zip Dee later.

c. Dometic will not make any element-for-element correspondence between the prior art *patents* and the *claims* of the '172 Patent.

d. Dometic will not use the claim language of the '172 Patent in comparing the accused product to the prior art (so that the jury will not be led to think Dometic is comparing the *patent* to the prior art, as it has stated it will not do).

e. In asserting invalidity, Dometic will not introduce argument, testimony or exhibits that are not provided in the expert validity reports. For example, Dometic cannot rely upon any combination of patent references in comparisons to the accused structure, for it has identified no such combination, and it should not be allowed to "spring" additional arguments regarding combination of references or where the suggestion to combine the references occur in the art.

f. Dometic will not be permitted to assert at trial that any structure or component of the prior art is the "equivalent" of an element of any claim at issue other than what is indicated in Exs. O and P as being such an equivalent.

And because of the procedural hoops through which Dometic has forced Zip Dee to jump to reach this result, Fed.R.Civ.P. ("Rule") 37(a)(4) requires that Dometic reimburse Zip Dee for all reasonable expenses (including attorneys' fees) that it has incurred in arriving at this destination. This Court expressly finds that Dometic's positions in this area were not substantially justified and that no other circumstances make an award of expenses unjust.

### Opinions of Counsel

■ As stated earlier, Dometic provided just one opinion of outside counsel dated March 27, 1992 in support of its "good faith" defense to a charge of willful infringement. It did not disclose the fact that the same counsel had issued two earlier opinion letters bearing on the '172 Patent in suit, one dated April 9, 1991 and the other dated August 16, 1991. It was only when Zip Dee's counsel asked to see the advising attorney's billing records that counsel learned of the two earlier opinions—and it then took this Court's order to require Dometic's production of the two opinion letters, although at that time this

---

**5.** As indicated earlier, what is said in the text does not apply to Dometic's position based solely on Zip Dee's own earlier product.

Court denied Zip Dee's contemporaneous motion for fees in that respect.

There is little wonder that Zip Dee has renewed its motion for fees. Regrettably, Dometic's present explanation for that dubious course of conduct reeks of an effort on its part to deceive by withholding plainly relevant evidence. Its claimed excuse is that the earlier letters dealt with products whose design was different from the Dometic product (the "Model 9000") now accused of infringement in the present litigation. As to the August 1991 opinion letter, Dometic's original Memorandum in Opposition to Zip Dee's motion to compel said at page 7 (emphasis in original):

> The letter concerns a product that has fabric running underneath the slatted metal cover so that, in effect, it is a conventional awning provided with a slatted metal cover mounted above the awning. *It does not involve the Accused Model 9000.* While the design discussed is similar to the Accused Model 9000 in that it has the fabric running underneath the metal cover, it does so *without grommets.*

That statement (to add insult to injury, particularly the underscored sentence) is really disingenuous. To be sure, the August 1991 opinion letter did not refer to "Model 9000" by that name—but only because that product had not been produced at that time. What a comparison of the withheld August 1991 opinion and the disclosed March 1992 opinion discloses is that the earlier opinion had pointed out the hazards faced by Dometic's product then under contemplation, and had then suggested *expressly* that a way to avoid those hazards would be to punch holes in the connecting flap—a suggestion that Dometic promptly embodied in the device now in litigation (its Model 9000), at the same time obtaining a March 1992 follow-up opinion from counsel on the validity of that new embodiment.

To put it bluntly, it is really a misrepresentation for Dometic to have said that the August 1991 opinion "does not involve" Dometic's now-accused product. Look at how Dometic's attempted (and plainly deliberate) suppression of the August 1991 opinion would have worked. It would have left Zip Dee with the burden of attacking a seemingly free-standing 1992 opinion as to the device now in dispute, precluding any effective cross-examination as to whether the differences between that device and the one that counsel had earlier urged should not be adopted were really meaningful. It relatedly withheld from Zip Dee the statements in that earlier opinion that were potentially favorable to Zip Dee in this action.

We are long past the era in which the "sporting" or "fox-hunt" theory of litigation used to prevail. It is an understatement to say that no legitimate basis existed for Dometic's failure to disclose the August 1991 counsel's opinion up front as integrally related to its "good faith" defense (a defense that can only be understood as requiring that the adversary be provided—in *good* faith—with everything relevant to that defense). What Dometic has attempted here through its nondisclosure of the August 1991 opinion offends the operative principles in this area, well set out by this Court's colleague Honorable James Zagel in *Abbott Labs. v. Baxter Travenol Labs., Inc.,* 676 F.Supp. 831, 832 (N.D.Ill.1987):

> In 1885, Judge Wallace, sitting in the Southern District of New York, addressed this issue in a patent case where some of the communications by a patent attorney to plaintiff were produced and the defendant sought production of the remainder. The Court found waiver saying a party "cannot remove the seal of secrecy from so much of the privileged communication as makes for his advantage and insist it shall not be removed as to so much as makes to the advantage of his adversary, or may neutralize the effect of such as has been introduced." *Western Union Tel. Co. v. Baltimore & Ohio Tel. Co.,* 26 F. 55, 57 (C.C.S.D.N.Y.1885). In 1978 Judge Will of this Court came to a similar conclusion. *Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 720–21 (N.D.Ill.1978). Wigmore said much the same thing:
>
> > The client's offer of ... a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consulta-

tion is intended only as an incidental means of defense and not as an independent means of attack and to use it in the latter character is to abandon it in the former.

6 Wigmore, *Evidence* 638 (McNaughten Rev.1961). The reasons for the rule stated by Judge Wallace and Dean Wigmore show clearly why the defendant's assertion of privilege here as to some documents is impermissible. A party claiming good faith reliance upon legal advice could produce three opinions of counsel approving conduct at issue in a lawsuit and withhold a dozen more expressing grave reservations over its legality. Preservation of privilege in such a case is simply not worth the damage done to the truth. *See Weil v. Investment/Indicators*, 647 F.2d 18, 24-25 (9th Cir.1981).

Accordingly Dometic is ordered to reimburse Zip Dee for *all* attorneys' fees and out-of-pocket expenses (1) incurred by Zip Dee in obtaining production of the August 1991 and April 1991 opinions,[6] (2) incrementally incurred by Zip Dee by reason of the delay in furnishing those opinions and (3) incurred by Zip Dee in its efforts—past and present—to obtain an award of such fees and expenses. As with the earlier ruling in this opinion, this Court finds no substantial justification for Dometic's positions in this respect, nor does any other circumstance make an award of such expenses unjust (again see Rule 37(a)(4)).

### Conclusion

Both facets of Zip Dee's present motion are granted for the reasons and on the terms stated in this opinion. This action is set for a telephonic status hearing at 8:30 a.m. January 6, 1997, to discuss the remaining procedures that are needed to set the patent claims in this case for a prompt trial.

### Appendix as to Earlier Opinions

November 10, 1993—Most of Dometic's Affirmative Defenses ("ADs") included in its An-

swer were stricken (three of the ADs were characterized as "irresponsible pleading").

December 23, 1993—Zip Dee's motion to dismiss this action against original codefendant Camping World, Inc. ("Camping World"), with a stipulation never again to sue Camping World or its customers for infringement, was granted over the opposition (!) of Camping World. It is worth noting, as the opinion said, that the same lawyers who represent Dometic represented Camping World, which would not have been vulnerable to the claim preclusion and issue preclusion bars that impact on Dometic's ability to defend and to sue in this lawsuit.

July 1, 1994—Before Zip Dee filed the motion that generated this 1994 opinion, Dometic had multiplied its earlier defensive efforts by asserting 15 ADs. Then in response to Zip Dee's motion Dometic itself withdrew *seven* of those (which should not have been advanced to begin with). In this 1994 opinion several of the survivors also bit the dust, though a few survived (at least for the moment).

March 15, 1995—Although the opinion deferred ruling on the substantive issues regarding Zip Dee's Complaint that were posed by Dometic's mislabeled summary judgment motion, this Court had occasion (at page 2) to note as to Dometic's litigation tactics:

> Dometic's response must regrettably be characterized as disingenuous—a characteristic that has unfortunately marked other aspects of its conduct in this litigation.
>
> \*     \*     \*     \*     \*     \*
>
> Dometic has thus mischaracterized both its own earlier legal position and the nature of the brief Opinion that struck the Eleventh AD.

April 17, 1995—In the course of declining to decide a Dometic issue-narrowing motion because it was premature, this Court observed at the outset:

> Dometic Corporation ("Dometic") and its counsel seem determined to treat this liti-

---

**6.** Looked at alone, the April 1991 opinion presents a closer question—but because the two earlier opinions were obtained through the same ef-

forts, any potential distinction is not material for purposes of the present motion.

gation like a salami, to be consumed one slice at a time.

May 19, 1995 (886 F.Supp. 1427)—Dometic's purported Rule 56 motion, treated instead as an issue-narrowing motion under Rule 16, was denied both as to claim preclusion and as to issue preclusion. Though the lengthy opinion found that both sides' presentations were guilty of having muddied the waters somewhat in their earlier battles (*id.* at 1437), it was clearly Dometic that was guilty of "extraordinarily distressing inconsistency" (*id.* at 1436) and as to whom the opinion at 1443 said:

> Stretching (if not breaking) the bounds of good faith pleading, Dometic also impermissibly asserts that Zip Dee *actually* litigated its rights in the slatted metal configuration in the earlier lawsuit. Even on a generous reading of what was decided by the California jury, the record there makes it plain that the issue now presented by Zip Dee was *not* decided.

August 3, 1995—In granting Zip Dee's motion for leave to file a Third Amended Complaint over Dometic's objection, this Court at pages 2–3 found that Dometic had perpetuated its earlier distortion of the prior California litigation between Zip Dee and Dometic's predecessor, summarizing (*id.* at 3–4):

> Thus Dometic persists in mischaracterizing the preclusion issues, just as it did in its earlier motion that this Court most recently dispatched in a written opinion dealing with claim preclusion and issue preclusion questions.

September 29, 1995 (900 F.Supp. 1004)—At last Dometic obtained at least a partial victory: It succeeded in resisting the principal part (though not all) of Zip Dee's motion to strike Dometic's AD 12.

October 11, 1995—Apparently unaccustomed to defeat in consequence of Dometic's repeated pursuit of dubious arguments and litigation tactics, Zip Dee sought reconsideration of the September 29 opinion. In rejecting that effort as without merit, the opinion remarked at page 1:

It may be that Zip Dee is so taken aback at losing on any issue in this litigation (for the most part it has been the prevailing party in the opinions and rulings that this Court has been called upon to issue in this bitterly contested lawsuit) that it believes that this Court must have made a mistake: It said "motion denied" when it really meant to say "motion granted."

November 16, 1995 (905 F.Supp. 535)—Perhaps flushed with its single (though not complete) recent success, Dometic advanced a meritless motion as to its claimed ability to present certain defenses to Zip Dee's patent infringement claims even though Dometic's predecessor had lost an earlier infringement lawsuit involving the same issues. That argument was rejected on issue preclusion grounds, with this Court stating at the beginning of the opinion (*id.* at 536) and in its Conclusion (*id.* at 539):

> Like the mythical Hydra, Dometic Corporation ("Dometic") seeks to grow two figurative heads in place of each one of its heads of legal argument that gets lopped off from time to time in the course of this lawsuit. It is time to cauterize, and thus to kill permanently, Dometic's most recent attempted renewal—its currently tendered "Renewed Motion To Narrow the Issues Pursuant to Fed.R.Civ.P. 16 Based on Patent Invalidity."

> \*   \*   \*   \*   \*   \*

> Although the goal of Dometic's proposed revival of its earlier motion is without merit, the motion itself (one seeking to narrow the issues) must ironically be granted. In substantive terms this opinion—by way of parallel to the second Labor of Hercules—has applied a burning brand as well as a sword to Dometic's contention, and that contention will not be allowed to raise its head again. Dometic is foreclosed from attacking the validity of Zip Dee's patent based on its arguments that Zip Dee has violated the on-sale and public-use provisions of the patent statute.

May 30, 1996 (926 F.Supp. 772)—At the outset of this opinion, this Court commented sorrowfully on the "extraordinary bitterness" of this action, in which "regrettably, the obvi-

ous bad blood between the parties has extended to their counsel as well" (*id.*). Dometic's belated effort "to expand rather than to contract the scope of the litigation—to create the legal equivalent of a mathematical divergent series rather than the more appropriate convergent series—" (*id.* at 773) merited and received this court's criticism, in the course of the opinion's denial of Dometic's attempt to obtain leave to file its Fifth Amended Answer and Counterclaim more than two years after it had "concededly been in possession of at least substantially all (if not in fact all) of the facts required to file that claim" (*id.*). As the opinion (*id.* at 774) said of Dometic's attempt to explain that unexplainable delay:

> But that is extraordinarily unpersuasive, so much so that it appears to border on the disingenuous—if indeed it has not crossed that border. Dometic seeks to obscure the already-quoted contention that was contained in its own motion, which in the course of stressing its position that little delay will be occasioned by the current injection of its claim (in the same vein, Dometic's Motion at 2 said that it "anticipates a very limited amount of discovery unique to the proposed counterclaim") confessed that the Counterclaim is based on the same facts on which Dometic originally presented AD 12 more than two years earlier.

Dometic's motion was denied in principal part because of "the existence of undue delay on Dometic's part and undue prejudice to Zip Dee by pushing back the time of resolution of Zip Dee's own claims" (*id.* at 775).

July 9, 1996 (931 F.Supp. 602)—This opinion recapitulated the earlier history of the litigation (as partially reflected in this Appendix) in the course of addressing still another (and also unsuccessful) Dometic motion for partial summary judgment. As the opinion began (*id.* at 604):

> This long and contentious litigation between Zip Dee, Inc. ("Zip Dee") and The Dometic Corporation ("Dometic") has continued to pose so many and varied issues as to assume almost mythic proportions. Unfortunately the myth most often called to mind, as this Court has been called upon

to resolve the parties' numerous disputes, has been the fifth of the Labors of Hercules—the cleansing of the Augean Stables. Or perhaps, given the manner in which the same or closely related tasks seem to reappear frequently in somewhat altered guises, the somewhat more elegant reference should be to the punishment visited on Sisyphus.

September 27, 1996—This most recent opinion addressed discovery-related motions, two by Zip Dee (raising issues closely related to those now before this Court) and one by Dometic. Zip Dee prevailed on each motion, although neither side's attempt to cut off the other's presentation of certain aspects of evidence at trial was successful.